[Civ. No. 4949. Third Appellate District.—December 2, 1933.]

H. R. EDWARDS, Appellant, v. MODOC COUNTY BANK et al., Respondents.

Thomas H. Breeze and C. S. Baldwin for Appellant.

Oscar Gibbons and White, Miller, Needham, Harber & Mering for Respondent Modoc County Bank.

Sullivan, Roche, Johnson & Barry for Respondent Rainey.

PARKER, J., pro tem.—Plaintiff, as a member of a partnership composed of himself and defendant Meckfessel, brought this action to recover moneys of the partnership which had been unlawfully and fraudulently appropriated

by Meckfessel to his own use and benefit in the discharge of certain obligations due from Meckfessel individually to the Modoc County Bank, of which latter institution the defendants Bush and Baker were respectively president and vice-president.

It is further alleged that this partnership money was rightfully due to plaintiff from his partner and from the partnership. The defendant bank and its officers admitted receipt of the money, but alleged that it was received in the due and regular course of business in payment of obligations due from the partnership to the bank; alleging further that there was still a balance due on certain notes for which plaintiff was liable, and for the payment of which plaintiff had deposited collateral. The cross-complaint of the bank was to recover a judgment for the balance so claimed, and to foreclose upon the security or collateral held by it.

The findings of the trial court were in favor of defendants on all of the issues.

Appellant has presented his contentions on appeal in a forceful and convincing manner, supported in the main by ample authority on the points of law involved. Indeed, both sides seem in harmony as to the law. The case was one of some difficulty for a trial court, and a decision either way would have found support in the testimony. However, as it is presented here, it resolves itself into a pure dispute of fact.

The partnership is admitted, and it is further admitted that there were certain partnership transactions involving the borrowing and lending of money for partnership use. The entire case presents a picture not new to the smaller counties of California. It is a picture of a small cattle ranch where one man owns the ranch and another joins him in a stock-raising venture, and neither of them have ample funds to conduct the business on a money-making basis. The non-owner starts with the idea of financing the partnership, and the owner of the lands is to furnish the feed and handle the actual running of the stock. On paper, the success of the enterprise is assured. All the increase will be female and these will be of superior fecundity; the meadows and the hillsides will yield abundant forage, and the market will always be at a peak. The enterprise will clear itself within

a year or two and both of the partners will bask in the smile of fortune. One partner remains on the property and the other aids in the management by cable from London. Experience has not demonstrated such ventures to attain any great degree of success. The actual reality differs much from the early picture. Feed gets short, cattle die and markets fall. The enterprise engulfs itself in the costs of operation, and these costs, usually sustained through borrowed money, eventually bring on the day of reckoning when the foreclosure decree and sale spell out the one word "failure".

In the instant case the trial court's findings may be summarized, and in effect will be adopted as the narrative of facts. The partnership between plaintiff and Meckfessel began some time in October, 1925, and up to January, 1926, was conducted without any written agreement of partnership. In January of 1926, the parties entered into written articles of partnership, the general nature of the business being the raising of cattle and ranching. On or about October 5, 1925, plaintiff gave to Meckfessel his power of attorney, by the terms of which Meckfessel was authorized, among other things, to sign, seal, execute and deliver bills of sale, mortgages and other instruments in writing as may be necessary in his judgment to properly carry on the business. This power of attorney remained unrevoked until April, 1931.

Before the time that plaintiff and Meckfessel first engaged in the said partnership, Meckfessel was indebted to the Modoc County Bank (which will hereinafter be designated as the "bank"), on a separate and personal indebtedness approximating $9,000. This indebtedness was secured, for the most part, by a valid chattel mortgage upon certain hay on the ranch of Meckfessel, and said hay had a value of about $12,000. In the fall of 1925 plaintiff informed the bank that he and Meckfessel had formed the partnership and that they desired to use the hay on the ranch and make the said hay over into an asset of the partnership. It was then agreed between the bank and the partnership that in consideration of the release of the hay to the partners, the partnership would assume the debt secured by the hay. Accordingly, the bank released the hay and discharged the separate debt of Meckfessel, taking the partnership as sole debtor.

In the year 1925 it was further agreed between plaintiff Edwards and the partnership on one hand and the bank on the other that future loans would be made by the bank and that any and all advances made by the bank for any purpose or in any way connected with the business of the partnership would be the liability of the partners, both individually and jointly, whether the loans were made through Edwards or Meckfessel, and whether the same should be evidenced by the note of Edwards or Meckfessel, or both. The business was carried on, and as the years passed the bank at times held the separate notes of the partners and the joint notes as well. There was thereafter no personal indebtedness of Meckfessel after the original secured debt had been discharged. In March of 1928 the partnership was indebted to the bank in the sum of $11,403.02, and such indebtedness arose out of loans made by the bank on the credit of the partnership, and evidenced by a note executed by Meckfessel. At this time a new note was taken for the sum of $13,000, which included a present advance of $1596.98, and this new note was signed by Meckfessel in his own behalf and in the behalf of Edwards, by virtue of the existing power of attorney. At all times the bank understood, and it was the intent of the bank, that the loans were advanced to the partnership for partnership purposes. As security for the last-mentioned note of March, 1928, a chattel mortgage was given the bank, executed similar to the note referred to as of that date, which mortgage covered a herd of cattle belonging to the partnership.

The entire relationship of the bank with the parties to the partnership, or either or both of them, was free from fraud, conspiracy or wrong dealing of any sort on the part of the bank or any of its officers or employees or agents.

The balance of $2,683.72, unpaid on the note of March, 1928, was the amount of the court's judgment, the said amount being decreed a lien upon the collateral deposited by Edwards with the bank.

Passing now from the narrative as disclosed in the findings we may briefly consider some of the facts argued from the evidence. There was testimony that plaintiff Edwards told the officers of the bank that the partnership would require large sums of money, that is to say, large sums when considering the size of the bank and its loaning capacity

under the banking laws. Edwards was told about these laws, and his reaction was that it could be arranged so that the loans would appear to be separate loans, and thus not on their face bear evidence of any violation of the law. It was his statement to the bank that whatever form the loans, or the evidence thereof might take, it would all be for the joint account, and so considered.

There was further testimony that separate notes were taken, in accord with this plan, and that when the bank examiners gleaned the truth, it was necessary for the bank to call for reduction of loans. There is evidence showing that Edwards was or became aware of this situation and cleaned up his own note. The correspondence on this transaction indicates that at the time Edwards was familiar with his obligations on the notes signed by Meckfessel.

It is one of the arguments of appellant that the taking of the notes in the individual names clearly shows an individual liability was intended, for the reason that the banking laws make this conclusion imperative. In other words, that whatever the plan might be, as indicated, it was aborted by the law, and the fact that the bank knew it could not loan the partnership over a certain amount demonstrates that the loans, if made, were not in violation of the law, but were in accord therewith, and therefore individual loans. This is purely argumentative. The fact that a bank might loan beyond its statutory limit does not absolve the debtor or raise any presumptions against the truth of the testimony given. On this point attention is called to the case of *Blochman Commercial etc. Bank* v. *F. G. Investment Co.*, 177 Cal. 762 [171 Pac. 943].

The entire brief of appellant, while highly convincing and most impressive, does, in its last analysis urge upon us that we practically retry the case; that we draw inferences from the testimony at variance with those drawn by the trial court. This we are not permitted to do under our scheme of appellate practice. In going over the evidence our inquiry is not as to what conclusions the testimony or evidence might support, or what inferences may logically be drawn therefrom. We seek to learn whether or not the inferences drawn by the trial court are permissible and whether or not the facts will support the judgment, regardless of the fact that the same facts would support an entirely different con-

clusion. We would not have it appear that we ignore the excellent argument of appellant, but if we took up each phase of this argument, we would still conclude that while the judgment contended for by appellant would find ample support, yet, so also would the judgment of the trial court find ample support. In such a case our only course would be affirmance.

Much of the argument of appellant is to the effect that the testimony discloses that certain practices of the bank were irregular, and therefore subjected the entire testimony thereon to scrutiny and doubt. Passing, for the moment, the fact that the trial court entertained no such doubt, the regrettable situation throughout the entire nation is that banking practices in numerous instances were irregular and sometimes worse. We make no attempt to indict banks or bankers by this statement for the reason that in the vast majority of the cases the unfortunate results followed from the fact that the general prosperity ceased without warning, and but for the fact of many of these irregularities, carried on with the idea of saving a disaster, the debacle would have occurred sooner.

We find ample in the evidence to support the judgment, giving, as we must, a construction upholding the findings of the trial court.

No point is made upon the appeal as to the judgment in favor of Meckfessel. The trial court found that there were unsettled accounts between the partners and no accounting was had. In any event the appeal, in so far as it may affect Meckfessel, is not urged.

The judgment is affirmed.

Thompson, J., and Pullen, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 30, 1934.